Exchange Bank v. Commissioner.
Exchange Bank v. Commissioner
Docket Nos. 111442, 2654.
United States Tax Court
1944 Tax Ct. Memo LEXIS 164; 3 T.C.M. (CCH) 755; T.C.M. (RIA) 44248; July 28, 1944
*164 P. J. Guepet, C.P.A., for the petitioner. Homer J. Fisher, Esq., for the respondent. TURNER
Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined the following deficiencies in the petitioner's income and excess profits taxes: Excess
Docket
Income
Profits
Number
Year
Tax
Tax
111442
1939
$1,131.73
$134.68
2654
1940
1,418.75
228.89
The question presented is whether the petitioner was entitled to deduct as worthless debts the following amounts owing by the indicated debtors and charged off on its books during the years shown: Amount
Charged
Debtor
Off
Year
Investors Securities Corporation
$7,500
1939
Investors Securities Corporation
5,500
1940
P. V. Prudhomme
500
1940
Joseph and Suzette Unter
1,500
1940
Issue I. Indebtedness of Investors Securities Corporation. Findings of Fact The petitioner is a Louisiana banking corporation, domiciled at Natchitoches, and filed its income tax returns for 1939 and 1940 with the Collector at New Orleans. During the period 1918 through 1929, the petitioner became the owner of nine farms or plantations, which it operated. In 1932, and at the suggestion *165 of the Reconstruction Finance Corporation, which had declined to make a loan to petitioner secured by these farms, the petitioner organized Investors Securities Corporation sometimes hereafter referred to as Investors. Petitioner acquired all of the capital stock of Investors which had no stated value and was not carried on the books of petitioner at any value. The petitioner transferred the nine farms to Investors at their book value, and with respect to each farm received from Investors a vendor's lien note in the amount at which the farm had been carried on the petitioner's books. The notes, totaling $194,000, were used by petitioner as security for a loan from the Reconstruction Finance Corporation in the amount of 50 percent of the face value of the notes. Investors was formed for the convenience of petitioner in obtaining the loan. The directors and officers of petitioner and of Investors are the same persons. Between 1932 and 1940, certain of the farms which petitioner transferred to Investors, at a total value of $77,779.83, were sold. Two of the sales occurred prior to the end of 1935. These two farms had been transferred to Investors at a total value of $51,572.39, and *166 were sold for a total of $36,000. Investors operated the farms in order to keep them in a fair state of cultivation and thereby make them more salable. Funds for this purpose were advanced by petitioner to Investors, which gave as security therefor crop lien notes. From 1932 to 1940, such advances amounted to several thousand dollars each year. Included in the funds advanced each year were amounts sufficient to pay the interest due petitioner on the vendor's lien notes. The petitioner carried on its books only one account with respect to the amounts owing to it by Investors. This was a running account, and included not only the amounts entered with respect to the farms transferred to Investors, for which petitioner received vendor's lien notes, but also advances made to operate the farms, for which crop lien notes were received. The various debits to the account were designated by numbers. The petitioner charged off no part of the vendor's lien notes, except when the farm with respect to which a particular note was given was sold at a loss. The procedure followed by petitioner in making charge-offs with respect to crop lien notes was as follows: The proceeds received by Investors *167 during a given year from the sale of crops were applied against the amount of the crop lien notes for such year. An inventory was taken at the end of the year of Investor's supplies and chattels. This was checked and valued by petitioner's president. If the remaining amount of the crop lien notes exceeded the value of the inventory, as determined by petitioner's president, the petitioner charged off the excess as a bad debt. At the end of 1939, Investor's supplies and chattels were carried on its books at a total of $19,733.75, and were valued by petitioner's president at a value of $27,500. At the end of 1940, such supplies and chattels were carried on the books at a total of $23,636.48, and were valued by petitioner's president at $28,500. The petitioner charged off as worthless the following amounts of crop lien notes in the years indicated: 1939
$2,500
charged off of bills receivable
No. 35888 in the total amount
of $12,500
5,000
charged off of bills receivable
No. 35889 in the total amount
of $15,000
$7,500
Total
1940
$3,500
charged off of bills receivable
No. 38358
2,500
charged off of bills receivable
No. 38471
$5,500
Total
During 1939 and 1940 the petitioner *168 received from Investors as interest the amounts of $8,060.86 and $5,581.61, respectively. In its income tax returns for 1939 and 1940, the petitioner deducted the amounts of $7,500 and $5,500, respectively, as worthless debts. In determining the deficiencies for those years, the respondent disallowed the deductions. Opinion From the evidence, we are unable to find that the petitioner has shown that the amounts of indebtedness in controversy were worthless in the taxable years. While evidence was submitted as to the procedure followed by the petitioner in determining the amount to be charged off each year and as to its valuation of Investor's supplies and chattels at the end of each taxable year, we are not informed as to the original amount of the indebtedness created, nor the amount of the proceeds from the sale of crops applied on such indebtedness. Furthermore, Investors owned several farms in 1939 and 1940, and there is nothing to indicate what their value was at the end of the respective years. On brief, the petitioner argues that since the sale of the farms in every instance was for less than the amount at which it had transferred them to Investors, and since the Reconstruction *169 Finance Corporation had made a loan of only 50 percent of the amount at which the farms had been transferred to Investors, it cannot be assumed that there was an expectation that recovery on the crop lien notes might be had from the farms. While the evidence shows that the two farms sold prior to the end of 1935 were sold for less than the amounts at which they were taken over by Investors, it does not show that to have been the case with respect to any other farm or farms. The fact that the Reconstruction Finance Corporation, in 1932, made petitioner loans, secured by the vendor's lien notes, on the basis of 50 percent of the amount at which the farms had been transferred to Investors does not establish the value of the farms at any particular amount even in 1932, much less indicate what the value was in 1939 and 1940. The respondent's determination on this issue is sustained. Issue II. - Indebtedness of P. V. Prudhomme Findings of Fact About 1932 the petitioner loaned $2,000 to P. V. Prudhomme on his personal note. Interest was regularly paid, but nothing was paid on principal, the note being renewed from time to time. In 1940 Prudhomme lost his health and petitioner, concluding *170 that it would never be able to collect the note in full, decided to charge off its loss thereon gradually. Acting on that determination, petitioner charged off as worthless in 1940, $500 of the principal amount of the note. On May 20, 1941, Prudhomme gave a second note for $160 to cover interest due and unpaid on the principal note. Later in 1941 petitioner charged off as worthless the $160 interest note and a further $250 on the principal note. The note was disposed of in 1942 for $750, and the $500 remaining was charged off the petitioner's books at that time. In its income tax return for 1940, the petitioner took a deduction of $500, representing the amount of the Prudhomme note charged off in that year. In determining the deficiency, the respondent disallowed the deduction claimed. To the extent of $500 the Prudhomme note was not recoverable in 1940, and that amount of the said note was charged off by petitioner in that year. Opinion The facts being as stated above, the petitioner is entitled, under section 23(k)(1) of the Internal Revenue Code, as amended by section 113 of the Revenue Act of 1943, to the deduction claimed. Issue III. - Indebtedness of Joseph and Suzette *171 Unter Findings of Fact In 1935 or 1936, the petitioner loaned $3,000 to Joseph and Suzette Unter, who were then engaged in business of some undisclosed character. Interest was paid on the loan for a year or two, when the Unters failed in business. The petitioner then realized it had sustained a loss on the loan. The bank examiners had never considered that the loan was a desirable one for the petitioner to have made, and in their reports for several years prior to 1940 suggested that the petitioner should charge it off. The petitioner charged off $1,500 of the loan in 1940 and the remaining $1,500 in 1941. In its income tax return for 1940, the petitioner deducted as a worthless debt $1,500 of the loan to the Unters. In determining the deficiency for 1940, the respondent disallowed the deduction claimed. Opinion From the evidence presented, it appears that the Unters failed in business at some undisclosed time between 1935 and the end of 1938, and that upon such failure the petitioner realized that it had sustained a loss on the loan. Whether the loan was secured or not, is not disclosed. Some mention is made in the record of the petitioner learning, after the Unters' failure *172 in business, that it would be unable to collect anything on the loan from the property of the mother of the Unters. Since there is no showing that the mother or her property was in anywise liable for the repayment of the loan, we must conclude that neither was liable, and that the petitioner's discovery of the fact that it could not collect from her property is of no significance as to when the loan became worthless. In the absence of evidence to show that any portion of the loan became worthless in 1940, the respondent's disallowance of the claimed deduction is sustained. Decisions will be entered under Rule 50.